UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Owen Shepherd,

                          Plaintiff,


                                                          **Hon. Hugh B. Scott**

                    v.
                                                          10CV837A

                                                          **Report
                                                          &
New York State, Office of Mental Health,                  Recommendation**
Buffalo Psychiatric Center,
and
New York State, Department of Civil
Service, New York State, Office of the
State Comptroller, necessary party,

                          Defendant.


        Before the Court is the defendants' motion for summary judgment (Docket No. 18).


                              **Background**

        The plaintiff, Owen Shepherd, brings this action under the Americans With Disabilities

Act ("ADA") against the New York State Office of Mental Health ("OMH") and the Buffalo

Psychiatric Center ("BPC").[1]  Shepherd alleges that he has been employed by OMH at the BPC

since January 18, 2001. (Docket No. 1 at ¶ 4). He began as a "half time" food service worker.

_____

        [1]  Although the caption of the complaint lists "New York State, Department of Civil
Service, New York State, Office of the State Comptroller, necessary party" as defendants, the
record does not reflect that any attempt was made to serve these entities or individuals.

                                  1

(Docket No. 1 at ¶¶ 11-12). Shepherd alleges that on January 19, 2006 he was promoted to a Mental Health Therapy Aide Trainee and is currently a Mental Health Therapy Aide (Docket No. 1 at ¶¶ 11-14). In 2003, Shepherd filed a complaint of discrimination on the basis of disability with the United States Equal Employment Opportunity Commission ("EEOC"). (Docket No. 1 at ¶16. ). Shepherd claims that he has been the subject of various acts of retaliation since filing his EEOC complaint continuing until April 16, 2009. (Docket No. 1 at ¶17). According to the plaintiff, "due to harassment" from coworkers and supervisors, in late 2006 he went to work in a new building at BPC known as the RCCA. (Docket No. 1 at ¶19). On October 23, 2008, the plaintiff was arrested for allegedly stalking a co-worker. Shepherd denied the allegations and, according to the plaintiff, the charges were dismissed on March 20, 2009. (Docket No. 1 at ¶ 21). The defendants allegedly discovered that Shepherd had violated a temporary order of protection and suspended him without pay from October 24, 2008 to April 6, 2009. (Docket No. 1 at ¶ 22). Shepherd asserts that he had never been informed about the temporary order of protection. (Docket No. 1 at ¶ 23). Shepherd alleges that the defendants had previously accused him of baseless allegations. In 2003, the plaintiff asserts that the defendants "charged" him with sexual harassment which led to an "unsatisfactory" performance rating. Shepherd appealed this evaluation to the New York Statewide Performance Evaluation Appeals Board which found that the defendants had not followed proper procedure. (Docket No. 1 at ¶26). The plaintiff claims that he was denied a summer vacation in 2008 and 2009 (Docket No. 1 at ¶ 28). Shepherd claims that on April 16, 2009 he attempted to access the "Strozzie" building to pick up back pay stubs and discovered that his key fob had been deactivated. The plaintiff alleges that the bulletin boards in the Strozzie building have more up to date job postings than the buildings to which he had

access. He also asserts that other similarly situated employees who work in the RCCA had access to the Strozzie building. (Docket No. 1 at ¶¶ 29-31). The plaintiff asserts that on the following day, April 17, 2009, the defendants deactivated his co-workers access to the Strozzie building, but then reactivated the key fobs of his co-workers, but not his. When he complained about this, his access to the Strozzie building was reactivated. (Docket No. 1 at ¶ 32). Shepherd claims that he suffers stress and anxiety as a result of working at the BPC and saw a therapist about it in 2008 and 2009. (Docket No. 1 at ¶ 33). Based on the foregoing, the plaintiff alleges that he was discriminated against pursuant to the ADA.

The defendants acknowledge that Shepherd was appointed to the full time position of Mental Health Therapy Assistant effective January 18, 2007. (Docket No. 19 at ¶ 11). The defendants state that in March of 2003, the BPC instituted disciplinary proceedings against Shepherd based upon the complaints of a female co-worker, Elizabeth Kleinschmidt. The proposed penalty was six months suspension without pay. On April 22, 2003, Shepherd and BPC agreed to settle the disciplinary proceeding. In return for the BPC holding the six month suspension "in abeyance" the plaintiff agreed not to have any contact with Kleinschmidt (at work or outside of work) and agreed to a referral for treatment through the BPC's Employee Assistance Program ("EAP"). (Docket No. 19 at ¶¶ 13-14). The defendants state that on September 5, 2003, Shepherd was involved in another work incident in which he got into a verbal altercation with his supervisor, became loud, threatening and abusive. The BPC determined that his conduct "severely interfered with the operation of the facility," represented a danger to patients and other employees. Shepherd was placed on immediate involuntary leave of absence. (Docket No. 19 at ¶ 15). As a condition to returning to work, Shepherd was required to

undergo a fitness for work examination by the New York State Department of Civil Service

Employee Health Service that included both a medical and a psychiatric examination. The

plaintiff submitted to the examination and was returned to work on November 18, 2003. (Docket

No. 19 at ¶ 16). On October 23, 2008, officers of the Buffalo Police Department appeared at the

BPC to execute a warrant for the plaintiff's arrest. Shepherd was charged with stalking in the 4th

degree, a class B misdemeanor based upon a complaint filed by Elizabeth Senick (nee

Kleinschmidt), the female co-worker he was accused of harassing in 2003. The plaintiff was

placed on administrative leave, with pay, after his arrest on October 23, 2008. The BPC

determined that Senick had made several complaints to the Buffalo Police over the course of the

proceeding months about Shepherd's conduct (i.e. driving by and calling her home). On October

4, 2008, Senick alleged that the plaintiff followed her and her daughter into a Home Depot store.

A couple days later, Senick approached Shepherd at the BPC and told him to leave her alone.

Thereafter, he sent Senick a letter attempting to explain himself, apologizing for his prior

behavior. (Docket No. 20, Exhibit G, October 15, 2008 letter).[2] After Shepherd was arrested on

October 23, 2008, an order of protection was issued requiring the plaintiff stay outside of a one

block radius of BPC's Forest Avenue facility. He remained on administrative leave, with pay,

until January 7, 2009. (Docket No. 19, at ¶19). On January 8, 2009, BPC suspended Shepherd

and started disciplinary proceedings against him. (Docket No. 19 at ¶ 23). On April 7, 2009,

BPC withdrew the disciplinary proceedings and the plaintiff was restored to the payroll

_____

[2]   In the letter, Shepherd advised Senick that he thought she was "so pretty;" and that the "more [he] found out about [her] the more [he] liked" her and "for more than just [her] pretty eyes." (Docket No. 20, Exhibit G, page 2 of the letter). He then told her that she had "all the qualities that [he] thought a good women should have" and that he "was also in love with [her]." (Docket No. 20, Exhibit G, page 3 of the letter).

retroactive to January 8, 2009. (Docket No. 19 at ¶ 24). The defendants assert that the scheduling of vacation time is governed by a labor-management agreement between the CSEA and the BPC, requiring employees to submit "bids" for vacations time during a specified "vacation bid period." (Docket No. 19 at ¶ 25). By the time the plaintiff returned to work on April 7, 2009, the vacation bidding roster had already been circulated and completed and the approved vacation schedule had already been posted. (Docket No. 19 at ¶ 26). The defendants allege that Shepherd was told that even though the bid period was over, he could take time off from whatever days were "left open," but that the plaintiff never sought to do so. (Docket No. 19 at ¶ 27). The defendants also state that Shepherd's key fob giving him unlimited access to the Strozzi building[3] was deactivated due to security concerns while he was on administrative leave. When Shepherd attempted to gain access to the Strozzi building on April 16, 2009, he discovered that his key fob had been deactivated. Shepherd approached the security officer, however, the officer had not yet been advised that Shepherd was cleared to return to work. According to the defendants, Shepherd became loud and agitated and was told to leave the building or be arrested for disorderly conduct. (Docket No. 19 at ¶ 30). After Shepherd complained to the Human Resources office about the deactivation of his key fob, the Acting Deputy Director of Facility Administration decided that due to security concerns only the staff that needed to be in the Strozzi building on a regular basis should be allowed unrestricted access to the building. Based on that, the key fobs of all residential services staff permitting unlimited access to the Strozzi building were deactivated on April 17, 2009. (Docket No. 19 at ¶ 31). At a subsequent meeting

---

[3] The defendants assert that the Strozzi building is where most BPC inpatients are housed. Some administrative offices are there, but most, including Human Relations and Labor Relations, are located in a separate building called the Strozzi annex. (Docket No. 19 at ¶ 29).

of managers on April 20, 2009, the BPC decided to allow residential staff, including Shepherd, to have all day and evening access to the Strozzi building and the key fobs for all were reactivated that same day. (Docket No. 19 at ¶32).

**Motion for Summary Judgment**

The defendants seek summary judgement on various grounds, including: (1) this action is barred by the Eleventh Amendment to the United States Constitution; (2) that the plaintiff cannot prove his retaliation claim, as a matter of law because there was no adverse action taken here, there was no causal connection between the acts alleged by the plaintiff and any protected activity by the plaintiff, and the defendants had a legitimate non-retaliatory reasons for the actions undertaken. (Docket No. 21).

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). To prevail on its summary judgment motion, the moving party must show that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, we "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir.2001).

In discrimination cases, the inquiry into whether the plaintiff's protected class caused the

conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a "sparing" use of the summary judgment device because of juries' special advantages over judges in this area. . Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61 (2d Cir.1998); accord Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir.1998) (noting juries' possession of the "current real-life experience required in interpreting subtle sexual dynamics of the workplace based on nuances, subtle perceptions, and implicit communications").

Nonetheless, an employment discrimination plaintiff faced with a properly supported summary judgment motion must "do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See Distasio, 157 F.3d at 61. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor. See McCarthy v. New York City Technical College, 202 F.3d 161, 167 (2d Cir.2000). In this regard, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra,

964 F.2d at 188. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Finally, factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts his own prior deposition testimony. See Bickerstaff v. Vassar College, 196 F.3d 435, 455 (2d Cir.1999); Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir.1997).


**Sovereign Immunity**

The only defendants in this case, OMH and the BPC, are both agencies of the State of New York. The defendants assert that sovereign immunity bars this action against both defendants. It is well-settled that discrimination claims under Title I of the ADA against a state are barred under the Eleventh Amendment. Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). The plaintiff asserts that the instant claim is brought under Title V of the ADA. (Docket No. 23 at page 2). Chief Judge William M. Skretny recently addressed the applicability of the doctrine of sovereign immunity to retaliation claims brought under Title V of the ADA in Johnson v. New York State Dept. of Correctional Services, 2012 WL 4033485 (W.D.N.Y. 2012). There, the Court held:

> Plaintiff's ADA claims must similarly be dismissed. There is no
> subject matter jurisdiction over Plaintiff's claim of discrimination
> under the ADA because "Title I of the ADA does not constitute a

valid exercise of Congress' authority under section 5 of the Fourteenth Amendment sufficient to abrogate the state's Eleventh Amendment sovereign immunity." Canales–Jacobs v. N.Y.S. Office of Court Admin., 640 F.Supp.2d 482, 498 (S.D.N.Y.2009) (citing Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)). Further, where "a state is immune from underlying discrimination, then it follows that the state must be immune from claims alleging retaliation for protesting against discrimination." Chiesa v. N.Y. State Dep't of Labor, 638 F.Supp.2d 316, 323 (N.D.N.Y.2009). ***Therefore "[s]overeign immunity also extends to claims of retaliation brought pursuant to Title V of the ADA.***" Emmons v. City Univ. of N.Y., 715 F.Supp.2d 394, 408 (E.D.N.Y.2010); Chiesa, 638 F.Supp.2d at 323.

Johnson, 2012 WL 4033485 at *3(emphasis added).

The plaintiff also points to the fact that the plaintiff had brought a prior ADA claim in federal court against "the same employer" in 2005 and that the prior case did not address the sovereign immunity issue. (Docket No. 23 at pages 2-3). It appears that summary judgment was granted dismissing the plaintiff's prior case on the grounds that the plaintiff had not established that he was a qualified individual with a disability for the purposes of the ADA. See Shepherd v. Buffalo Psychiatric Center, No. 05CV563 (W.D.N.Y. December 15, 2009)(Docket No. 71). The fact that the issue was not addressed in a prior case does not establish subject matter jurisdiction in this matter.

The Court agrees with the reasoning set forth by Chief Judge Skretny in Johnson. Inasmuch as the claims in this case are barred by the Eleventh Amendment, the Court lacks subject matter jurisdiction in this matter. Thus, the defendants' motion for summary judgment should be granted. In light of the above, the Court need not address the defendants' remaining arguments.

## Conclusion

Based on the above, it is recommended that the defendant's motion for summary judgment (Docket No. 18) be granted and that the plaintiff's complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v.

<u>Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
January 29, 2013